CHARLES F. AYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6442.   Promulgated June 14, 1927.

1. DIVIDEND INCOME.—A corporation during the year 1920 was a going concern and had some income. It ordered and paid regular quarterly dividends upon preferred stock and quarterly dividends upon common stock. In the absence of proof to the contrary, *held*, that all of these dividends constitute taxable dividend income to the stockholders receiving the same.

2. LOSS ON SALE OF CORPORATE STOCKS.—Under the circumstances of this case the buying price of seven shares of corporate stock *held* to represent the market value of such shares rather than the selling price of one fractional share of the same stock.

3. LOSSES.—The amount of a deduction for losses sustained in respect of corporate funding notes determined.

*J. C. Peacock, Esq., John W. Townsend, Esq.,* and *Wheaton Kittredge, Esq.,* for the petitioner.

*J. Arthur Adams, Esq.,* for the respondent.

The Commissioner's deficiency letter of June 25, 1925, asserted a deficiency in income tax for the calendar year 1920, in the amount of $16,238.64.

The issues involved in this proceeding are (1) the inclusion in gross income of $3,571.86 dividends received from the Clinchfield Coal Corporation, of which sum the petitioner contends that $2,692.39 was in fact a return of capital; (2) whether the basis for the computation of gain or loss on the sale of shares of stock of the Carolina, Clinchfield & Ohio Ry. Co. should be on a cost basis of $64.50 per share instead of $63 per share used by the Commissioner; and (3) whether the petitioner was entitled, in the year 1920, to a deduction on account of bad debts in the amount of $32,683.24, or a lesser amount, or in any amount.

At the trial of this action the Commissioner's counsel moved to amend his answer to the effect that the restoration to an asset account of an amount treated as the March 1, 1913, value of the funding notes of the Atlantic & Birmingham Construction Co. in the sum of $5,267.64 was erroneous and that the consequent deduction of a bad debt in the amount of $3,957.31 should be disallowed, and that a liquidating dividend of $1,310.33 should be treated as income for 1920 and the deficiency thereby increased. Motion to amend was granted at the trial.

On the day before the trial of this action, petitioner's counsel procured a subpoena *duces tecum*, requiring the Commissioner, or some person representing him, to appear at the trial and produce " a true copy of the Commissioner's final determination of income and profits taxes of the Clinchfield Coal Corporation, Dante, Va., for the calendar year 1920, as embodied in the 60-day deficiency letter of April 10, 1926, bearing symbols IT : CR : G–1–60D TAD (a purported copy of which has been filed by said corporation as a part of its appeal now pending before this Board under Docket No. 16594) or in any more recent deficiency letter to that company."

At the trial the Commissioner's counsel stated for the purposes of the record that the Commissioner felt that he could not comply with the Board's subpoena; that it would be impracticable to furnish that information on such short notice, but, waiving the short notice, the Commissioner feels that he is prohibited under the provisions of section 3167 of the Revised Statutes from making known any information in a return of a taxpayer who is not a party to the proceeding before the Board. Thereupon, petitioner's counsel moved that the Board find that so much of the alleged deficiency as is the result of the inclusion in income of $3,571.86 of dividends of the Clinchfield Coal Corporation be disallowed. Later, in the course of the trial, petitioner's counsel moved in effect that the Board take judicial

notice of the contents of the pleadings and record in an action pending before it in Docket No. 16594.

These two motions of the petitioner's counsel were made a part of the record to be disposed of in the final disposition of the proceeding.

### FINDINGS OF FACT.

During the year 1920, the petitioner was the owner of both preferred and common shares of the Clinchfield Coal Corporation. During the months of February to August, inclusive, of said year he received from said corporation dividends upon both classes of stock aggregating $2,692.39, and during the month of November he received further dividends upon both classes of stock aggregating $879.47. The petitioner's preferred stock was 7 per cent cumulative, and the company had paid this preferred dividend regularly in quarterly payments during each of the years 1914 to 1924, inclusive. The petitioner received regular quarterly dividends upon his common stock in this corporation during the years 1918, 1920, and 1921.

Prior to May 8, 1916, all the stock of the Carolina, Clinchfield & Ohio Ry. Co. was held by the Cumberland Corporation. The petitioner on that day owned 290 shares of preferred stock of the Cumberland Corporation which he acquired prior to 1913 at a cost of $20,000. On May 8, 1916, that corporation determined to dissolve and distribute its assets among its stockholders, and on or about July 3, 1916, the petitioner exchanged his 290 shares of Cumberland Corporation preferred stock for 193⅓ shares of Carolina, Clinchfield & Ohio Ry. Co. preferred stock. On July 3, petitioner sold his fractional one-third share for $21, and on July 5 he purchased seven shares at $64.50 per share. During the year 1920, the petitioner sold the said 200 shares of Carolina, Clinchfield & Ohio Ry. preferred stock at a loss, and the Commissioner computed the loss on the basis of a cost of $63 per share.

During the year 1908 and prior years, the petitioner acquired 800 shares of stock of the Atlantic & Birmingham Construction Co. at a cost of $80,385.20. At this time the company had outstanding indebtedness in the form of several issues of collateral trust notes on which it was unable to pay the interest which was falling due from time to time. In order to protect their investments by giving the company time to complete its construction and develop its properties some of the principal stockholders, including the petitioner, agreed to advance to the company from time to time funds sufficient to take care of the interest payments and thus prevent a foreclosure and sale of the entire assets of the company. During the period between October 27, 1908, and April 29, 1912, the petitioner made advances under said agreement in the aggregate amount of $26,038.22. These

advances were first made upon open account; $300 of interest was credited to this account and, on and prior to May 1, 1912, the account was adjusted by the issue to and the receipt by the petitioner of the company's so-called funding notes of 1912 for the amount of $26,-338.22. These notes were due on May 1, 1913. On October 31, 1912, the petitioner made a further advance to the same company for the same purpose of $1,553.32, and, during the period from April 28, 1913, to April 30, 1915, made further advances aggregating $6,402.05. These advances were also made upon open account and later adjusted by the issue and receipt by the petitioner of the company's so-called funding notes of 1915, which were due on May 1, 1915. The principal enterprise in which the Atlantic & Birmingham Construction Co. was interested was the construction and development of the Atlanta, Birmingham & Atlantic R. R. Co., a large part of the stock of which was held by the construction company. In 1915, the railroad company's properties were sold at a foreclosure sale, and both its stock and the stock of the construction company became worthless in that year, and the petitioner charged off his loss on the Atlantic & Birmingham Construction Co.'s stock when he closed his books for the calendar year 1915.

On December 30, 1916, the bookkeeper and accountant employed by the petitioner charged the then accumulated total of funding notes, $34,293.57, to profit and loss. In making his income-tax return for the calendar year 1916, the petitioner did not claim a deduction from gross income on account of the foregoing book entries and has never claimed any deduction on account of said funding notes except during the year 1920.

At this time, December, 1916, the Atlantic & Birmingham Construction Co. had outstanding funding notes of the issue of 1912 in the amount of $1,963,610.32, and of similar funding notes of the issue of 1915 in the amount of $644,259.84. The said notes of 1912 were secured by a pledge of collateral security and real estate with a further provision in said pledge that any excess over the amount of the notes of the issue of 1912 realized from said security should be held to be security for the funding notes of the issue of 1915. It was known at the end of 1916 that a large part of the collateral security so pledged was worthless but that some comparatively small portion thereof, together with the real estate, had a substantial value. A committee representing the note holders was formed in 1917 to liquidate the securities back of the notes. The petitioner was a member of this committee. The liquidation of these securities was completed in the year 1920 and there was realized, after payment of liquidation expenses, the sum of $97,728.66. This amount was distributed to the note holders as a first and final dividend equivalent

to 4.975 per cent of the indebtedness. The petitioner's share of this liquidation was $1,310.33, which he received on or about July 29, 1920. On December 10, 1920, the petitioner's bookkeeper restored the face value of the Atlantic & Birmingham Construction Co. notes to an asset account on the petitioner's books; credited the same with the liquidating dividend of $1,310.33, and on December 31, 1920, charged to profit and loss the remaining balance of $32,683.24, which latter amount petitioner claimed as a bad debt deduction in his income-tax return for the year 1920.

In computing the deficiency asserted in the deficiency letter the Commissioner found that the part of the so-called funding notes issued prior to March 1, 1913, had a value on that date of 20 per cent of their face value and restored to petitioner's asset account $5,267.64, the same being 20 per cent of $26,338.22, and allowed a deduction on account of this debt of the difference between the amount so restored and the liquidating dividend received, such deduction being $3,957.31.

OPINION.

TRUSSELL: 1. Respecting the two motions made on behalf of the petitioner at the trial and made a part of the record for consideration with the final disposition of this case, it must be observed that during the year 1920 the Clinchfield Coal Corporation was an existing and apparently going concern. It seems to be admitted that during that year this company had some income and profit, although the petitioner contends that such income and profit were in amount much less than the volume of dividends paid. No evidence was introduced or offered at the trial respecting the amount of income and profits enjoyed by the corporation or the total amount of dividends paid, although petitioner's counsel argued that such evidence could be found in an alleged deficiency letter sent by the respondent to the Clinchfield Coal Corporation, a copy of which was claimed to be attached to pleadings in an action pending before the Board under Docket No. 16594. Even though such a deficiency letter may exist, and a copy thereof be in the files of the action mentioned, we are of the opinion that such letter could not be taken as proof of anything contained in said letter. It only sets forth what the respondent may or may not have done. The answer may or may not deny all allegations of fact which petitioner sets up based upon said letter and at any event is only evidence of a determination of a deficiency and the basis used in such determination but is not proof in itself of facts in controversy. The two motions made on behalf of the petitioner, as hereinabove described, are, therefore, denied.

The record shows that the Clinchfield Coal Corporation was, during 1920, a going concern; that it paid dividends in the ordinary

course of business, and, in the absence of convincing evidence to the contrary, it must be found, and we so hold, that the dividends received by this petitioner from the said corporation during 1920 constitute taxable dividend income.

2. The record herein shows that 193 shares of stock of the Carolina, Clinchfield & Ohio Ry. Co., which petitioner sold at a loss in the year 1920, were acquired in July, 1916, together with an additional one-third fractional share in exchange for stock of the Cumberland Corporation, which he had acquired prior to March 1, 1913, at a cost of $20,000; that the remaining seven shares of the stock sold in 1920 were acquired on July 5, 1916, at a cost of $452.38, the equivalent of $64.50 per share. The fractional one-third share received in the exchange was sold on July 3, 1916, for $21, the equivalent of $63 per share. The Cumberland Corporation stock, which figures in this exchange, had been acquired a long time prior to 1913. From the record we are of the opinion that the basis for determining the loss sustained by the petitioner in 1920 from the sale of the railway stock may properly be its market value on the date that such stock was acquired. The only evidence of such market value is the sale of the one-third fractional share at the rate of $63 per share and the purchase of seven shares at the rate of $64.50 per share. We are of the opinion that the buying price of the seven shares is a truer index of market value than the selling price of the fractional share, and that the loss sustained by the petitioner from this transaction should be the difference between the amount of 200 shares at $64.50 per share and the selling price in 1920.

3. The funding notes of the Atlantic & Birmingham Construction Co. were acquired by this petitioner in exchange for money advanced by him, in association with other interested parties, for the purpose of protecting their prior investments in the stock and notes and indentures previously issued by said company. To our mind these funding notes, therefore, stand more in the nature of additional investments than in the nature of debts. Regarding the book entry of December 30, 1916, we are of the opinion that the said entry may be disregarded so far as the issues of this action are concerned. The notes were not worthless on that date as there stood back of them, or part of them, collateral securities from which approximately $97,000 of cash was later realized.

The respondent found that the portion of these funding notes which was issued and acquired by the petitioner prior to 1913 had a value on March 1, 1913, equivalent to 20 per cent of par. And, we are of the opinion that the record supports that finding of value. It therefore follows that on March 1, 1913, the petitioner owned Atlantic & Birmingham Construction Co. funding notes of a then

value of $5,267.64; that he thereafter acquired the same company's funding notes of 1915 at a cost of $7,955.35; and that he ultimately realized in the year 1920, upon these investments, the amount of $1,310.33. We are, therefore, of the opinion, and so hold, that the petitioner's net income for the year 1920 as determined by the respondent should be further reduced by the deduction of a loss on account of the so-called funding notes of 1915 in the amount of $7,955.35.

> *The deficiency may be redetermined for the year 1920 in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*

PHILLIPS, dissenting: The liability of the Atlantic & Birmingham Construction Co. to the petitioner arose from money advanced and constituted an indebtedness to it. We have heretofore pointed out in our decisions that the provision of the statute permitting the deduction of debts ascertained to be worthless is a specific provision removing losses from such a source from the provisions of statute providing generally for the deduction of losses. I am of the opinion that the deduction to which the petitioner is entitled is upon account of a worthless debt and that he is therefore not limited to the March 1, 1913, value but may deduct the entire amount of the indebtedness. So far as the decision holds that the petitioner is an investor, rather than a creditor, and is limited to a deduction of the March 1, 1913, value of the bonds of the construction company, I can not agree that the result reached is correct.

MARQUETTE and TRAMMELL concur in the dissent.